UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAD HENDERSON,

        Plaintiff,

v.

YP MIDWEST PUBLISHING, L.L.C.,

        Defendant.

                                    /

Case No. 14-14645

Honorable John Corbett O'Meara

**OPINION AND ORDER GRANTING
DEFENDANT'S DECEMBER 30, 2015 MOTION FOR SUMMARY JUDGMENT**

    This matter came before the court on YP Midwest Publishing's December 30, 2015 motion for summary judgment. Plaintiff Brad Henderson filed a response January 20, 2016; and Defendant filed a reply February 2, 2016. Oral argument was heard March 3, 3016. For the reasons that follow, the court will grant Defendant's motion.

**BACKGROUND FACTS**

    Plaintiff Brad Henderson worked as an account executive at defendant YP Midwest Publishing ("YP") from June 30, 2005, until his voluntary resignation March 10, 2015. Plaintiff asked for and was granted medical leave from October 30, 2012, through February 11, 2013. Plaintiff claims that upon his return, he was assigned smaller and lower-performing accounts. He filed a union grievance to resolve his concerns. Sometime in April 2013, Plaintiff began secretly recording his conversations with YP personnel, compiling over 220 recordings amounting to 70 hours.

    On May 8, 2013, Plaintiff began an approved FMLA and short term disability ("STD") leave, which was scheduled to end July 22, 2013. He attempted to extend his leave, but the extension was denied by The Hartford, YP's insurance company, August 27, 2013, when it determined that

Plaintiff's medical documentation did not support a finding that he was disabled. Plaintiff appealed the denial; however, it was affirmed November 22, 2013. Throughout this period of time, Plaintiff did not return to work.

After Plaintiff's leave expired in July 2013 and after The Hartford determined that he was not disabled, Steve Flagler, YP's senior manager for labor relations, sent Plaintiff three letters on October 3 and 18 and November 14, 2013, advising Plaintiff to return to work or provide medical documentation to support additional leave time. When Flagler believed Plaintiff had failed to respond to the requests by December 6, 2013, Cindy Sieders notified Plaintiff that his employment was terminated effective immediately.

On January 2, 2014, Plaintiff called Flagler to tell hm he had received the termination letter but claimed he had previously mailed and faxed information to Flagler in response to the return to work letters.[1] Pursuant to the effective collective bargaining agreement, a union-management review board hearing was scheduled after Plaintiff's termination. Following the March 6, 2014 hearing, the parties agreed that Plaintiff would be reinstated with full benefits, retroactive to his December 6, 2013 termination date. Additionally, it was agreed that Plaintiff could remain on medical leave as an ADA accommodation pending receipt of further medical information from his doctor. Plaintiff's doctor then advised that Plaintiff required leave through June 4, 2014; therefore, his leave accommodation continued.

---

[1] Plaintiff attached as Exhibit 11 to his response brief a fax confirmation sheet dated October 22, 2013, and as Exhibit 12 a certified mail receipt for a letter to Flagler from November 25, 2013. The certified mail receipt is signed by "Sam Lee," a person YP's personnel office claims never to have been employed by YP. Plaintiff has also submitted a transcript from one of the secretly recorded voicemail messages he left on Flagler's phone on October 22, 2013, indicating that Plaintiff had sent the requested information to Flagler on October 15.

When Plaintiff's doctor cleared Plaintiff to return to work, he also recommended that he be assigned to a different supervisor. YP accommodated the request. However, Plaintiff did not return to work. Instead he emailed Flagler to tell him he wanted to move to a new office location. To further accommodate Plaintiff, Flagler offered him a sales position in Southfield. Plaintiff met with YP's general manager in Southfield but declined the offer, deciding to stay put. Plaintiff then returned to work June 16, 2014.

Because Plaintiff had been out of work for over one year, YP required Plaintiff to attend a training class in June and July 2014. Plaintiff did not believe the training was necessary; however, YP advised Plaintiff it did not have the resources to provide him with the one-on-one training he desired. Plaintiff completed the training and returned to work July 21, 2104. On September 3, 2014, Plaintiff requested another leave of absence as an ADA accommodation. The request was approved, and Plaintiff exhausted his 12 weeks of FMLA leave while on STD leave.

On January 22, 2015, Plaintiff was cleared to return to work the following week by his doctor. Plaintiff returned January 29, 2015, and worked eight and one-half days until he went on vacation. At the end of his vacation, Plaintiff submitted his voluntary resignation March 10, 2015, after accepting a job with a new employer.

During the brief time Plaintiff worked in 2015, he claims he was assigned unfavorable accounts, did not get access to YP's systems fast enough, and requested more training. In response, Plaintiff's new supervisor gave him new business lists to contact and assigned him specific accounts in early February. On January 29 and 30, the IT department worked with him to resolve his IT issues. By February 11, 2015, Siders had scheduled Plaintiff for training he had requested; however,

he worked only two more days before taking about six weeks' vacation, followed by his voluntary resignation.

## **LAW AND ANALYSIS**

To establish a *prima facie* case of failure to accommodate under the ADA, a plaintiff must establish the following: 1) he is disabled within the meaning of the ADA; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) the defendant knew or had reason to know of his disability; 4) he requested a reasonable accommodation; and 5) the defendant failed to provide the necessary, reasonable accommodation. Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 982-83 (6th Cir. 2011).

For purpose of this motion YP concedes that Plaintiff Henderson has established the first four elements of his *prima facie* case. Therefore, the only question is whether YP failed to provide him a reasonable accommodation. YP argues that it granted Plaintiff's requests for leave from October 2012 through February 2013 and from May 2013 through July 2013. In March 2014 it reinstated him retroactively and granted additional leave time until June 2014. In September 2014 he sought and was granted another 12 weeks' FMLA leave until he returned in late January 2015. Therefore, YP claims it fulfilled its duty to accommodate.

Plaintiff contends that YP failed to provide reasonable accommodation when it "*terminated Plaintiff on December 6, 2013 while he was on a medical leave and in the face of a request for a short extension of that leave*." Plaintiff's resp. br. at 9 (emphasis in original). Plaintiff, however, was no longer on medical leave on December 6. In late August The Hartford had determined that Plaintiff's medical documentation did not support a finding that he was disabled, and the appeal of that decision was affirmed in late November. Furthermore, after the union-management review

board hearing March 6, 2014, Plaintiff was granted leave and benefits retroactive to December 6, 2013, and given further leave extending to June 2014. Plaintiff returned to work in July 2014, and on September 3, 2014, asked for and was granted another 12 weeks' leave as an ADA accommodation. Therefore, there is no period of time for which Plaintiff's multiple requests for leave to accommodate a disability were not granted.

In addition, YP provided further accommodation by reassigning Plaintiff to a different supervisor and offering him a position at a different location-- which Plaintiff declined after he had requested it. Therefore, YP is entitled to summary judgment on Plaintiff's failure to accommodate claims under both the ADA and Michigan PWDCRA[2].

Plaintiff also claims he was discriminated against based on his disability. To establish a *prima facie* case of disability discrimination, a plaintiff must establish the first three elements as required for a failure to accommodate claim. In addition, he must show that he suffered an adverse employment action and that there is a causal connection between that adverse employment decision and his disability. Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 364-65 (6th Cir. 2007), abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2012).

In this case plaintiff Henderson cannot establish that he suffered an adverse employment action. Plaintiff concedes that he voluntarily resigned from his job at YP after accepting employment at another company on March 10, 2015. Again, Plaintiff asserts that his December 2013 termination was an adverse employment action. However, Plaintiff was reinstated

---

[2]Because the legal analysis under the ADA and Michigan's PWDA are substantially the same, Plaintiff's claims and their analyses regarding the ADA apply as well to his PWDCRA claims.

5

retroactively with full benefits. Moreover, there is no evidence to support a finding that the reason for his December 6, 2013 termination was based on his disability. Although Plaintiff subjectively believes that was the reason, there is no evidence to show YP's proffered reasons for his dismissal, his failure to return to work, along with his failure to respond to requests for information, are pretext to mask disability discrimination as the motivating factor in that termination.

> The Sixth Circuit has held that when an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.' The 'key inquiry' . . . is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action. Although the employer must point to particularized facts upon which it reasonably relied, the Sixth Circuit does 'not require that the decisional process used by the employer be optimal or that it left no stone unturned.'

Deister v. AAA Auto Club of Mich., 91 F. Supp. 3d 905, 929 (E.D. Mich. 20015).

At the time of the December 6 termination, Flagler and Sieders had the following particularized facts: 1) Plaintiff's STD was denied in August 2013; 2) Plaintiff's appeal of that denial was denied in November 2013; 3) Plaintiff had failed to return to work; and 4) Plaintiff had failed to respond to Flagler's letters. It is immaterial that *after* the termination YP learned that Plaintiff attempted to respond.

Plaintiff attempts to create a genuine issue of material fact in arguing that YP's proffered reason for the termination was false because Plaintiff responded to Flagler's letters. Although this may present a question of fact, it is not a *material* question of fact, as Plaintiff ultimately prevailed following the union-management review board hearing and was reinstated retroactively with full benefits.

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show the following: 1) he engaged in activity protected by the ADA; 2) the defendant knew he engaged in the

6

protected activity; 3) the defendant subjected him to an adverse employment action; and 4) a causal connection exists between the protected activity and the adverse employment action. Falcone v. City of Warren, 581 F. Supp. 2d 841, 846 (E.D. Mich. 2008). "An adverse employment action is a materially adverse change in the terms or conditions of the plaintiff's employment caused by the employer's actions." Virostek v. Liberty Twp. Police Dep't., 14 F. App'x 493, 502 (6th Cir. 2001). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefit, significantly diminished material responsibilities, or other indices that might be unique to the particular situation." Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 594 (6th Cir. 2007).

In this case Plaintiff complains of a number of actions by YP after he returned to work that he believes were retaliatory for his exercising his rights under the ADA. Plaintiff expresses the following complaints: 1) he was assigned poor-performing accounts; 2) his sales revenue was not included in daily reports; 3) he received a handwritten note instead of an email; 4) at a sales meeting Sieders incorrectly stated the amount of revenue he sold; 5) an order was not closed until he provided his supervisor with additional information; 6) he did not receive new accounts immediately upon his return from leave on January 29, 2015; 7) he was required to attend training classes in June and July 2014; 8) YP did not immediately stop Plaintiff's union dues from being withdrawn from his paycheck; and 9) he had IT issues in January 2015.

None of the actions rises to the level of being "materially adverse," as none of them changed the terms and conditions of his employment. Plaintiff argues that taken together, all of these constituted a materially adverse change to his working conditions. However, it is clear these were *de minimus* in nature and were quickly resolved.

As stated early, because of the similarities in legal analysis between ADA and PWDCRA claims, the court finds that YP is entitled to summary judgment on all claims brought under the two statutes. Finally, Plaintiff conceded in his response brief that he is not entitled to relief for his FMLA interference claim. Plaintiff's resp. br. at P. 20.

## **ORDER**

It is hereby **ORDERED** that defendant YP Midwest Publishing's December 30, 2015 motion for summary judgment is **GRANTED.**

                                                  s/John Corbett O'Meara
                                                  United States District Judge

Date:  March 7, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 7, 2016, using the ECF system.

                                                  s/William Barkholz
                                                  Case Manager